**GREAT LAKES HIGHER EDUCATION CORPORATION and Firstar Bank, Milwaukee, National Association, formerly known as First Wisconsin National Bank of Milwaukee, Plaintiffs,**

v.

**AUSTIN BANK OF CHICAGO, Defendant.**

**No. 93 C 1894.**

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1993.

---

Mary·K. Schulz, Vigil, Berkley, Schulz and Gordon, P.C., Chicago, IL, for plaintiffs.

Edward S. Salomon, Thomas K. Tryboski, James M. DeZelar, Robbins, Salomon & Patt, Ltd., Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiffs Great Lakes Higher Education Corporation ("Great Lakes") and First Wisconsin National Bank of Milwaukee ("First Wisconsin") filed a five count complaint against Defendant Austin Bank of Chicago ("Austin") alleging breach of warranty (810

ILCS 5/4–207), negligence in the presentment of certain checks (810 ILCS 5/4–202), breach of warranty to a third party beneficiary (810 ILCS 5/4–207), conversion (810 ILCS 5/3–420) and common law negligence. Pursuant to Fed.R.Civ.P. 12(b)(6), Austin filed a motion to dismiss the entire complaint for failure to properly plead damages and to dismiss counts II through V for not alleging valid causes of action. For the reasons below, we grant Austin's motion to dismiss Counts II through V and require that Plaintiffs replead Count I.

## FACTUAL BACKGROUND

For the purposes of this motion to dismiss, the Court accepts as true the following factual allegations taken from Plaintiffs, complaint. Great Lakes is a Wisconsin not-for-profit corporation with its principal place of business in Madison, Wisconsin. First Wisconsin is a national bank with its principal place of business in Milwaukee, Wisconsin. Great Lakes was a customer of First Wisconsin and maintained a bank account there. Austin is a state bank with its principal place of business in Chicago, Illinois.

Between October 1990 and January 1992, Great Lakes, as servicer, issued 224 checks (the "checks") drawn against lender's funds in the account of Great Lakes at First Wisconsin, payable to the order of various payees. The checks were issued to the payees as loan proceeds pursuant to a student loan application submitted by each payee who was certified by the InterAmerican Business Institute ("IBI") located in Chicago, Illinois. Shortly after the issuance of each check, it was presented for payment to Austin Bank without the endorsement of the named payee. Austin Bank accepted each check for purposes of collection and forwarded each check to First Wisconsin for that purpose. Austin received payment from First Wisconsin in the face amount of each check even though the endorsement signature of the payee was not on any of the checks.

On February 27, 1992, First Wisconsin gave notice to Austin of its claim for breach of warranty by indicating that the checks lacked proper endorsement. First Wisconsin demanded that Austin refund to First Wisconsin the amount of the checks, a total of $273,152.88 plus interest. Austin failed to respond to this request for a refund, and Plaintiffs filed this suit.

## DISCUSSION

■ When considering a motion to dismiss, we assume as true all factual allegations contained in the complaint and make all possible inferences in favor of the plaintiff. *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). A motion to dismiss will not be granted unless "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). With these principles in mind, we proceed to analyze Austin's motion to dismiss.[1]

### *Sufficiency of the Pleadings*

■ Austin argues that Plaintiffs failed to adequately plead damages because none of the counts in Plaintiffs' complaint specifies which one of the two Plaintiffs was damaged. Federal Rule of Civil Procedure 8(e)(2) allows a party to plead inconsistent statements either alternatively or hypothetically within a single count or defense, or in separate claims or defenses. However, Rule 8(e)(2) specifically states that "all statements shall be made subject to the obligations set forth in Rule 11." *Id.* Rule 11 requires that the signer of a pleading certify that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." Fed.R.Civ.P. 11. Thus, a pleader may only assert contradictory statements of fact when the pleader legitimately is in doubt about the fact in question. *Id.*

In the instant case, First Wisconsin charged the checks to Great Lakes' account. Thus, there are two mutually exclusive possibilities which may exist: either (1) First Wis-

---

1. We have jurisdiction over this dispute based upon the diversity of the parties. The parties are here on diversity. We shall use the law of Illinois in our analysis because the injury allegedly occurred at the Austin bank located in Chicago, Illinois.

consin was not required to recredit Great Lakes for its loss of funds, so that Great Lakes is the proper plaintiff, or (2) First Wisconsin did recredit Great Lakes' account for its loss so that First Wisconsin has suffered the loss, and is the appropriate plaintiff here. Plaintiffs may not plead alternative arguments involving both the drawer and drawee as plaintiffs when it is clearly within their own knowledge which of them has suffered the loss of $273,152.88 to Austin. It is a violation of Rule 11 to withhold relevant factual evidence within the knowledge of the pleading party in order to gain the advantage of being able to plead more causes of action than are appropriate. Fed.R.Civ.P. 11.[2] This is also an inappropriate application of the alternative pleadings rule. Fed.R.Civ.P. 8(e)(2). Thus, with the exception of the counts dismissed with prejudice below, the remaining counts must be replead with greater specificity as to which party suffered the loss and to bring appropriate causes of action as to that party alone.[3]

*Count II: Negligence in the Presentment*

■ In its second count, Great Lakes alleges that Austin was negligent and breached its duty to exercise ordinary care under 810 ILCS 5/4-202 by accepting the checks without proper endorsement and sending them for presentment to First Wisconsin. Austin contends that because the harm to Plaintiffs occurred in the acceptance of the checks by Austin without proper authorization, rather than in the presentment process, § 5/4-202 does not apply here.

Under the UCC, presentment means "a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank or (ii) to accept a draft

made to the drawee." 810 ILCS 5/3-501. Section 4-202 provides that: "A collecting bank must exercise ordinary care in ... presenting an item or sending it for presentment." 810 ILCS 5/4-202(a)(1). Official Code Comment Two to this section states: "If the bank makes presentment itself, subsection (a)(1) requires ordinary care with respect both to the time and manner of presentment ... If it forwards the item to be presented the subsection requires ordinary care with respect to routing (Section 4-204), and also in the selection of intermediary banks or other agents." *Id.* at cmt. 2.

Under a plain reading of Official Comment Two, *Id.*, we hold that where, as here, Austin merely forwarded the item to First Wisconsin to be presented, it is only responsible for ordinary care under § 4-202 with respect to the routing and selection of intermediary banks or other agents. *Id.* Because Austin displayed reasonable care in regard to these activities by immediately forwarding the checks to First Wisconsin, we hold that § 4-202 does not apply to the instant case.

The case cited by First Wisconsin, *Northpark Nat'l Bank v. Bankers Trust Co.*, 572 F.Supp. 524, 534 (S.D.N.Y.1983), for the proposition that this Court should be flexible in applying § 4-202 claims is not persuasive. That case addressed wrongdoing in the presentment process where the defendant bank failed to timely return a fraudulent check or send notification of having received it unpaid within the applicable UCC time limits. *Id.* at 527-28. By contrast, Great Lakes argues that the exercise of ordinary care in the presentment process set out in § 4-202 extends to the acceptance of unauthorized checks. We refuse to extend the ordinary care standard this far in light of the Official Comment and the fact that other relevant UCC remedies in breach of warranty exist

---

**2.** Because we find that it is possible that Plaintiff's failure to plead properly may have been unintentional or inadvertent, we see no reason to impose any Rule 11 sanction upon Plaintiffs in this case. Certainly, a proper Complaint would have saved the Court the time and effort which was expended in deciphering the cause of action.

**3.** We also note that neither of the parties to this action included a statement of facts in their

memoranda in support of their claims. The lack of this statement has created confusion and has imposed an additional burden on the Court in that the Court must now decipher the appropriate facts from the Complaint. We direct the parties to correct this problem in the remaining papers which may be filed before us so that this matter may be handled more efficiently in the future.

that are more applicable to the instant situation.[4] Because these alternative remedies exist, we are not, as First Wisconsin asserts, allowing Austin to completely avoid liability by refusing to allow a negligence claim against it.

### Count III: Common Law Negligence

■ Plaintiffs invoke the law of common law negligence against Austin in their third count. In response, Austin cites *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 753–54, 435 N.E.2d 443, 450–51 (1982), for the proposition that under Illinois law, the parties to a commercial transaction cannot recover in tort for economic losses (the "Moorman doctrine"). In *Moorman*, the plaintiff sued the company that designed, manufactured and sold him a defective storage tank, asserting damages for the cost of repair and reinforcement as well as loss of use of the tank. *Id.* 61 Ill.Dec. at 753, 435 N.E.2d at 450. The Illinois Supreme Court held that the plaintiff had suffered "a commercial loss of the type that the law of warranty is designed to protect" rather than a "sudden and dangerous occurrence best served by the policy of tort law." *Id.* The court held that its conclusion applied to cases of negligence as well as strict liability, noting that "allowing an aggrieved party to recover under a negligence theory for solely economic loss would constitute an unwarranted infringement upon the scheme provided by the UCC." *Id.* 61 Ill.Dec. at 754–55, 435 N.E.2d at 451–52.

The Seventh Circuit has upheld *Moorman* in applying Illinois law. In *Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir.1992), the court held that the *Moorman* decision has been upheld consistently in Illinois and by the Seventh Circuit. The court explained that "the basic principle of Moorman is that the type of loss, not the defendant's conduct, is critical. When only economic loss is incurred, the plaintiff may only raise contract theories even if the defendant's alleged conduct constituted a tort as well as a breach of contract." *Id.* quoting *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508 (7th Cir.1988). *See also Nielsen v. United*

*Servs. Automobile Ass'n*, 244 Ill.App.3d 658, 183 Ill.Dec. 874, 881, 612 N.E.2d 526, 533 (1993) (stating that the Moorman doctrine applied to fire insurance policy coverage so that defendant had no duty in negligence to plaintiffs apart from their contractual undertakings).

Plaintiffs' argument is not persuasive that because the UCC clearly intended that it would be supplemented by common-law principles (§ 1–103), it follows that a claim for negligence may be asserted unless a specific provision of the UCC expressly overrules the common law. No section of the UCC expressly displaces any common law remedy. It is by implication that an alternative remedy under the UCC exists for such a factual situation that the common law is displaced on that same point. Here, First Wisconsin and Great Lakes have other remedies under the UCC which they have alternatively plead in their complaint, thus showing that a common law action for negligence is unnecessary and may not be alleged here.

We also do not accept Plaintiffs' contention that there is a need for further investigation in order to determine whether there existed a "commercial or contractual relationship" between the disputed parties, so as to invoke the Moorman doctrine. It is clear that the relationship is a commercial one because the transactions and damages involved in this case are financial in nature. Thus, there is nothing further to establish and Plaintiffs' negligence claim may not be properly asserted under Illinois law because of the Moorman doctrine.

### Count IV: Breach of Warranty Against Third Party

■ In Count IV, Great Lakes alleges that it is the third party beneficiary of a UCC § 4–207 transfer warranty owed by Austin to First Wisconsin, and thus Great Lakes is suing Austin for breach of warranty as a third party. Section 4–207 provides in relevant part that "a customer or collecting bank ... warrants to the transferee and to any subsequent collecting bank that ... all signatures on the time are authentic and autho-

---

4. *See* UCC §§ 4–207 and 3–417.

rized." 810 ILCS 5/4–207. Though Great Lakes is neither a customer nor a subsequent collecting bank, it relies upon a third party beneficiary theory of warranty owed by Austin to First Wisconsin. In this action, Great Lakes is the "drawer" of the checks from First Wisconsin, and First Wisconsin is the "drawee" of the checks.

Austin points to *Steinroe Income Trust v. Continental Bank N.A.*, 238 Ill.App.3d 660, 179 Ill.Dec. 671, 673, 606 N.E.2d 503, 505 (1992), in which the Illinois Appellate Court for the First District adopted the majority view that under Illinois law, a drawer may not maintain an action under UCC § 4–207. *Steinroe* specifically rejected *Sun'n Sand, Inc. v. United California Bank*, 57 Cal. App.3d 125, 129 Cal.Rptr. 861 (1976), the California case representing the minority viewpoint that a drawer may maintain an action as a third party beneficiary. The *Steinroe* court based its decision in part upon the UCC Comment to newly amended UCC § 3–417 which explicitly rejected the *Sun'n Sand* case in favor of the majority view. Ill.Ann.Stat., ch. 26, ¶ 3–417, UCC Comment 2 (Smith–Hurd 1992).

Because *Steinroe* is the main case to address this issue under Illinois law, we accept its holding that a drawer, such as Great Lakes in the instant case, may not assert a third party beneficiary claim in order to maintain a breach of warranty under UCC § 4–207. Plaintiffs' fourth count must therefore be dismissed.

### Count V: Conversion

■ In Plaintiffs' fifth count, First Wisconsin alleges that Austin converted the checks in violation of prior UCC § 3–419, Ill.Rev.Stat. ch. 26, § 3–419 (1961), and current UCC § 3–420. 810 ILCS 5/3–420 (1992). Illinois courts do not recognize an action for conversion of intangible rights. *In re Oxford Marketing Ltd.*, 444 F.Supp. 399, 404 (N.D.Ill.1978) *citing Janes v. First Federal Savings & Loan Ass'n*, 11 Ill.App.3d 631, 297 N.E.2d 255, 260 (1973). However, Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into the specific document. *Id.* A

party pleading an action in conversion under either common law principles or UCC § 3–419 must allege that it had title to or possession of the check. *In re Oxford*, 444 F.Supp. at 404–05. Under Illinois law, the elements of a cause of action for conversion under UCC § 3–419 are: (1) plaintiff's ownership of, interest in, or possession of the check; (2) plaintiff's forged or unauthorized endorsement on the check; and (3) defendant bank's unauthorized cashing of the check. *Burks Drywall Inc. v. Washington Bank & Trust Co.*, 110 Ill.App.3d 569, 66 Ill.Dec. 222, 226, 442 N.E.2d 648, 652 (1982).

■ Austin makes two assertions in order to dismiss First Wisconsin's conversion claim. First, it contends that because the checks represent a debt of First Wisconsin rather than an asset, First Wisconsin could not have had the requisite possession or interest in them to claim conversion. We hold that First Wisconsin's only interest in the checks at the time of the alleged wrongdoing was an obligation or debt to the payees, so that First Wisconsin did not have the requisite *possessory* interest to claim conversion. *Id.* The payees were the only ones who had the requisite possessory interest in the checks to bring a claim of conversion. *See* J. White & R. Summers, *Uniform Commercial Code* § 15–5, at 665 (3rd. ed. 1988).

First Wisconsin's reliance on *Justus Co. v. Gary Wheaton Bank*, 509 F.Supp. 103, 106 (N.D.Ill.1981), is misplaced because it dealt only with the drawer's rights in conversion rather than the drawee's rights and was decided before the new § 3–420 was released. The Official Comment to § 3–420 rejected *Justus*'s reasoning that a drawer is entitled to sue the depositary bank for conversion by stating that the "check represents an obligation of the drawer rather than property of the drawer" so that there "is no reason why a drawer should have an action in conversion." 810 ILCS 5/3–420, Official Comment 1. The new version of the Code thus supports Austin's contention that a drawee, like a drawer, has no valuable possessory interest

in the checks and may not bring a claim for conversion.[5]

## CONCLUSION

For the foregoing reasons, we dismiss with prejudice counts II, III, IV, and V of Plaintiff's complaint and give Plaintiffs leave to amend Count I by showing which party suffered damages in this suit.

5. This is not to say that First Wisconsin has no action against Austin for accepting money in exchange for the unauthorized checks. Under the liberal pleading standard for the Federal Rules of Civil Procedure, Rule 8(e), the facts set out in Plaintiffs' complaint seem to state an action for breach of presentment warranties under 3–417(a) and we grant First Wisconsin leave to amend its complaint accordingly.